IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROY D. THOMAS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action No. 09-179 |
| PENN UNITED TECHNOLOGY, BILL JONES, DAVID JONES, and JAMES FERGUSON, | ) ) ) ) ) | |
| Defendants. | ) | |

AMBROSE, Chief District Judge

**OPINION**
**and**
**ORDER OF COURT**

**Synopsis**

The Defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 70). Plaintiff filed a Response and Defendants filed a Reply thereto. (ECF Nos. 74 and 78). After careful consideration of the submissions by the parties and as more fully set forth below, the Defendants' Motion for Summary Judgment (ECF No. 70) is denied.

**I.    Background**

Plaintiff was employed by Defendant, Penn United Technology ("Penn United"), from November 16, 1987, until September 20, 2007. On January 14, 2005, Plaintiff suffered a non-work related automobile accident, which rendered him a quadriplegic.[1] Prior to the accident, Plaintiff held the position of Manager of Parts Assembly and Secondary Operations. On November 9, 2005, Plaintiff was told at a meeting that upon his return he would be in a different position, Team Leader

---

[1] Plaintiff has no function of his legs and does not have use of his right hand. He has movement in his left hand, but no feeling.

of Secondary Operations. Also during that meeting, Dave Jones, Vice President of Manufacturing, told Plaintiff that he could not be a good manager because his legs did not work. On January 3, 2006, Plaintiff returned to work at Penn United as Team Leader of Secondary Operations.

Upon his return, Plaintiff had to travel between buildings 1 and 2 to attend meetings at Penn United. Plaintiff was having trouble traveling between the buildings – there was a drop-off from concrete to the asphalt and the asphalt on the parking lot area was "busted up" from the winter weather and trucks driving over it. (ECF No. 79, ¶160). On several occasions, Plaintiff's wheelchair got stuck in the broken asphalt as he traveled between the buildings. *Id.* at ¶166. Plaintiff broke a wheel on his wheelchair while traversing between the buildings. *Id.* at 167. On April 25, 2006, Plaintiff suffered a work related injury by falling out of his wheelchair when his wheel was caught on some uneven pavement as it moved off the edge of the concrete pad onto the roadway while he was traversing between buildings. *Id.* at ¶155. Plaintiff returned to work on August 9, 2006. (ECF No. 75, ¶168). On October, 27, 2006, Plaintiff was medically removed from working at Penn United at the request of his treating physician, Dr. Brenes. *Id.* at ¶179.

Plaintiff has filed a Complaint against Penn United and individuals employed by Penn United. (ECF No. 1). The Amended Complaint asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951, *et seq.* Defendants filed a Motion for Summary Judgment. (ECF No. 70). After briefing by the parties, the issues are now ripe for review.

**II.    Legal Discussion**

    **A.    Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

## B. Count I – ADA (Disability Discrimination)[2]

"Congress enacted the ADA in 1990 as an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 579 (3d Cir. 1998), *see*, 29 C.F.R. §1630. Pursuant to the ADA, an employer is prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Discrimination encompasses not only "adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). The ADA states that an employer discriminates against an employee when he "does not mak[e] reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship...." 42 U.S.C. § 12112(b)(5)(A).

In light of the standards imposed by the ADA, it is well-settled that for a plaintiff to establish a *prima facie* case of discrimination under the ADA, he/she has the burden of showing:

1. He/She is a disabled person within the meaning of the ADA;

2. He /She is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;

---

[2] Plaintiff has also filed claims against Penn United for discrimination, failure to accommodate, harassment and retaliation under the PHRA and against the individual Defendants for aiding and abetting the discriminatory practice under the PHRA. (ECF No. 34, p. 17-21, Count V-VIII). While Pennsylvania courts are not bound by federal interpretation of parallel provisions in the ADA, those courts nevertheless generally interpret the PHRA in accordance with their federal counterparts. *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d. Cir. 1999)*(*an analysis of an ADA claim applies equally to a PHRA claim)*; Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir. 1996). Therefore, the discussion of the ADA claim is meant to apply equally to Plaintiff's PHRA claims as well. Additionally, I note that ADA cases are analyzed under the same framework as Title VII cases. *Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007); *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir. 1995); *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 188 (3d Cir. 2003).

>    and
>
> 3. He/She has suffered an otherwise adverse employment decision as a result of discrimination based on his/her disability.

*Gaul,* 134 F.3d at 580, *citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996); *Deane v. Pocono Medical Center*, 142 F.3d 138, 142 (3d Cir. 1998).  A failure to meet any one of these elements is fatal to Plaintiff's case.

The familiar burden shifting paradigm, established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793-94 (1973), applies here.  As a result, if the plaintiff makes out a *prima facie* showing of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action.  If the defendant meets this burden, the plaintiff must then offer evidence that the defendant's stated reason for the adverse action was pretextual. *Id.* at 802-04.  To prove pretext, the plaintiff must "cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication...or...allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994).

### 1. Adverse Employment Action

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1988). Defendants argue that Plaintiff fails to meet his *prima facie* case because his placement as the Team Leader of Secondary Operations was not an adverse employment action.  (ECF No. 71, pp. 9-11). Specifically, Defendants argue that Plaintiffs' new position as Team Leader retained his pre-accident hourly wage rate and benefits.  *Id.* at 10.  In a conclusory fashion, Defendants also state that they supported Plaintiff's career growth and development.  *Id.*

5

While "direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999). In this case, the evidence reveals Plaintiff went from a management employee as a Manager to a non-management employee as a Team Leader. Thus, in the organizational chart, Plaintiff's position as team leader was below manager positions. (ECF No. 79, ¶49, 50, 59). His duties changed. He had less responsibility than the manager position he previously held. *Id.* at 57. He went from managing 12-75 employees to managing no employees. *Id.* at ¶52. He was no longer in management, but had to report to a manager. *Id.* at ¶55. As a team leader Plaintiff did physical labor about 70 percent of the day and spent about 30 percent of the day doing paperwork. As a manager, he would spend about 90 percent of the day going to meetings and handling managerial level matters and only about 10 percent of the day doing actual physical labor. *Id.* at ¶77. He was no longer in charge of or had any connection with the parts assembly department. *Id.* at ¶60, 66. He no longer had customer contacts and he did not handle quality issues. *Id.* at ¶66. Thus, the scope and breadth of his duties and responsibilities changed. Additionally, Plaintiff had a reduction in pay grade from 10 to a 7. *Id.* at ¶61. Based on the same, therefore, I find that a reasonable jury could find that Plaintiff's employment was substantially decreased and caused disruption in his working conditions. Therefore, summary judgment it not warranted on this issue.

### 2. Pretext

"[W]hen the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d

759, 764 (3d Cir. 1994). Defendants argue the reason for returning Plaintiff to the Team Leader position was not pretextual or otherwise indicative of a discriminatory animus related to his disability. (ECF No. 71, pp. 11-15). Penn United's stated reason for not returning Plaintiff to his prior position is that his prior duties were absorbed by an existing manager and the position no longer existed. *Id.*

In opposition, Plaintiff argues there is sufficient evidence for a jury to believe that there was a discriminatory animus that was the motivating factor in the decision to return Plaintiff to the Team Leader position. (ECF No. 74, pp. 7-9). First, Plaintiff points to the comment made by Dave Jones in November of 2005 that he could not be a good Manager if he could not walk. *Id.; see also,* ECF No. 79, ¶¶13-14, 16. Plaintiff also points out that Dave Jones was one of the people who made the decision to return Plaintiff to work as a team leader rather than as a manager. (ECF No. 74, pp. 7-9; ECF No. 77-3, p. 112). As such, Plaintiff argues that both facts and the close proximity in time of the two events are relevant to show there was a discriminatory animus relating to Plaintiff's demotion. *Id.*

Additionally, Plaintiff argues that the timing of when Defendants state they made the decision to return Plaintiff to a Team Leader position is contradicted by their statement to the EEOC. Finally, Plaintiff adds that this is contradicted further by the fact that Defendants did not tell the manager who took over Plaintiff's previous responsibilities that he was going to permanently fill the Manager position until November of 2005. (ECF No. 79, ¶10). Thus, Plaintiff argues that the comment, together with the Defendants' contradicted timeframe of when the decision occurred is sufficient record for a jury to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of Defendants' decision to demote Plaintiff. *Id.* at 9.

After a review of the same, I believe there is enough evidence to permit a jury to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the reason to return Plaintiff to a Team Leader position. *See, Antol v. Perry,* 82 F.3d 1291 1301-02 (3d Cir. 1996)(a supervisor's discriminatory comment is relevant and may be entitled to weight by a

7

jury). Therefore, summary judgment is not warranted in this regard.

## C. Count II – ADA (Failure to Accommodate)

Next, Defendants argue that they are entitled to summary judgment as to Plaintiff's failure to accommodate ADA claim in Count II because "no reasonable juror could find that Penn United failed to reasonably accommodate Thomas." (ECF No. 71, p. 16). To establish a *prima facie* case of discrimination under the ADA for failure to accommodate, a plaintiff must show: 1) he is a disabled person within the meaning of the ADA; 2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an adverse employment decision as a result of the discrimination which in this context includes the failure to make reasonable accommodations. *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 761 (3d Cir. 2004) (internal quotation and citations omitted). While the ADA does not mention the "interactive process," with respect to reasonable accommodations, the ADA's regulations state that "covered entity [may have] to initiate an informal, interactive process…. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "[T]he EEOC's interpretive guidelines provide that: 'Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability.'" *Hohider v. United Parcel Service, Inc.,* 574 F.3d 169, 187 (3d Cir. 2009), *citing,* 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

> In handling a disabled employee's request for a reasonable accommodation, "both parties [employers and employees] have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor*, 184 F.3d at 312 *(quoting Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997)). "The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee

8

qualified to perform the job's essential functions. All the interactive process requires is that employers make a good-faith effort to seek accommodations." *Id.* at 317 (citation omitted). Accordingly, we have found that

> [a]n employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

*Hohider,* 547 F.3d at 187 (citations omitted).

### 1.     The Interactive Process

Not surprisingly, each side blames the other for the failure of the interactive process. (ECF Nos. 71, pp. 16-25 and 74, pp. 9-18). I will address each accommodation requested by Plaintiff separately.

#### a.     A Laptop Computer

There is no question that Plaintiff requested the accommodation of a laptop computer. (ECF No. 71, p. 19). Defendants argue, however, that Plaintiff failed to engage in the interactive process after making his request for a laptop computer. *Id.* at pp. 19-20. In response, Plaintiff suggests that he did engage in the interactive process. After a review of the evidence in the light most favorable to Plaintiff, I agree with Plaintiff. As Plaintiff points out, he "very respectfully asked for a laptop computer." (ECF No. 74, p. 11; ECF No. 79, ¶111). Plaintiff went through the chain of command to request the laptop by asking his manager, Paul Bergbibler, because his "hands were getting tired and painful, and it would help [him] keep up." (ECF No. 73-11, p. 146). He "also indicated that he thought a laptop would help him take notes during the daily production meetings." (ECF No. 75, ¶117). Paul Bergbibler took Plaintiff's request to Dave Jones, who denied the request. *Id.* at ¶119. While Dave Jones testified that he believed Plaintiff wanted the computer so he could work from home, according to Plaintiff, he never stated that he wanted a laptop so he could work from home.

9

(ECF No. 77-13, ¶20). I find that this is sufficient evidence to create a genuine issue of material fact that Plaintiff engaged in the interactive process.

Defendants suggest that after their "initial" denial, Plaintiff failed to follow-up with Dave Jones as he was instructed. *Id.* at 19, citing ECF No. 73-11, p. 50. I disagree. First, Dave Jones testified that Plaintiff did approach him after the rejection. (ECF No. 77-3, p. 43). During that discussion, Dave Jones again told Plaintiff that he did not want him to have a laptop. *Id.* As a result, the decision to reject Plaintiff's request was made.

Furthermore, I find that the evidence shows that a laptop could have reasonably been provided. (ECF No. 79, ¶¶114-115; ECF No. 80-3, pp. 89-90; ECF No. 77-7, pp. 2-5).

Therefore, I find there are genuine issues of material fact. Consequently, summary judgment is not warranted.

### b. Raising of Plaintiff's Desk

Defendants first argue that Plaintiff did not even suggest to Bill Ferguson that he wanted his desk to be raised. (ECF No. 71, p. 20). This argument is contradicted by Plaintiff's affidavit wherein he states that he spoke with "Mr. Ferguson about the need to make modifications to my 'office' which was comprised of a desk in the manufacturing area." (ECF No. 77-13). As a result, I find that there is a genuine issue as to whether the request was made.

Defendants next argue that his claim fails because Plaintiff's desk was raised "promptly upon his request." (ECF No. 71, pp. 20-21). Based on a review of the evidence in the light most favorable to Plaintiff, I find there is a genuine issue of material fact as to whether Defendants acted promptly and in good faith. For example, Plaintiff returned to work on January 3, 2006, and his desk was too low for him to fit his wheelchair. (ECF No. 79, ¶ 149). His desk was not raised until February/March, 2006, two to three months after Plaintiff returned to work. *Id.* Neither Dave Jones, Bill Jones, nor Bill Ferguson facilitated the raising of Plaintiff's desk. *Id.* at ¶150. Rather Plaintiff's desk was raised by two employees who happened to be working in the area who were asked by

Plaintiff if they could raise his desk.  *Id.*  Consequently, I find there is a genuine issue remains. Therefore, summary judgment is not warranted.

          c.          <u>Plaintiff's Travel Route</u>

There is no question that Plaintiff requested an accommodation with regard to his travel route between building 1 and building 2.  (ECF No. 71, p. 21).  Defendants argue, however, that the requested route change was not safe.  *Id.* at 21-22.  Specifically, Defendants suggest that the route Plaintiff wanted to take required him to "navigate through a series of presses which are set up for varying bandoliering projects."  *Id.* at 21.  Plus, Defendants argue that they provided him with a reasonable route between the buildings.  *Id.* at 22.

After a review of the evidence in the light most favorable to Plaintiff, however, I find there is a genuine issue as to whether the route provided by Defendants was reasonable and whether the requested accommodation was unreasonable.  For example, there is evidence that the HealthSouth's site evaluation dated September 28, 2006, notes that the "threshold could be evened" as approximately ¼ to ½ of an inch was uneven due to "traffic in and out with forklifts and other pieces of equipment." (ECF No. 79, ¶156, Response).  Plaintiff testified that he was having physical problems in transporting between the buildings.  *Id.* at ¶158.  There was uneven pavement between buildings 1 and 2.  (ECF No. 77-10, pp. 4-5).  Plaintiff had trouble traveling in his wheelchair from building to building.  (ECF No. 79, ¶160).  There was a drop-off from concrete to asphalt, and the asphalt to the parking lot area was busted up from the winter weather and trucks driving over it.  *Id.* The broken pavement and asphalt in the path that Plaintiff traveled between the buildings was very obvious to the naked eye.  *Id.* at ¶161.  In fact, Plaintiff's wheel was broken on the path between buildings 1 and 2.  *Id.* at . ¶167.  He even got stuck so bad that in one instance Plaintiff had to be pushed out of a hole with a fork truck.  *Id.* at ¶166.  Plaintiff, again, asked for an alternate route or for Defendants to fix this route.  *Id.* at ¶168.  Finally, on April 25, 2006, Plaintiff fell out of his wheelchair when traversing the path and sustained a work-related injury.

Moreover, there is evidence that the route Plaintiff proposed in the alternative was safe. For example, most employees of Penn United used the entrance he requested to use. (ECF No. 77-13, ¶24). There was always a walkway or passage through the department in building 1. *Id.* Consequently, I find there are genuine issues of material fact. Therefore, summary judgment is not warranted.

        d.  <u>Toilet</u>

Defendants suggest that Plaintiff never engaged in the interactive process with regard to his alleged need for a higher toilet seat. (ECF No. 71, pp. 22-24). After a review of the evidence in the light most favorable to Plaintiff, I disagree. For example, on May 12, 2005, there was a meeting with OVR where Plaintiff raised the issue of the height of the toilet seat while he was in the bathroom with Ester Locke, John Pichler, and Kevin Kroneberg. (ECF No. 79, ¶¶132-133). During this meeting, it was noted that Plaintiff's wheelchair was higher than the toilet seat. *Id.* at ¶134. Pichler, Kroneberg and Plaintiff discussed either installing a higher toilet seat or putting the toilet on a block to raise it up. *Id.* at ¶135. During the meeting, Kroneberg measured the height of the toilet seat. Thereafter, Plaintiff notified either Ferguson or Kroneberg that a raised toilet seat was available at a local home improvement store for approximately $70.

When Plaintiff returned to work in January of 2006, no toilet seat had been raised. He asked Ferguson if he was going to make sure that the office and the bathrooms were changed and Ferguson said he would take care of it. Yet, no change was made. Based on the same, I find there is a genuine issue of material fact. Therefore, summary judgment is not warranted.

        e.  <u>Physical Activity</u>

Finally, Defendants suggest they are entitled to summary judgment because they instructed Plaintiff to forego engaging in any physical activity, consistent with his doctor's restrictions. (ECF No. 71, pp. 24-25). After a review of the evidence in the light most favorable to Plaintiff, I find there is a genuine issue of material fact. For example, the job description of the allegedly newly created

team leader position for Plaintiff indicates that Plaintiff was required to lift 75 pounds, carry 75 pounds, push 60 pounds, and pull 60 pounds – all in excess of his doctor's restriction of a five pound limit. (ECF No. 77-17, p. 1). According to Plaintiff, when he asked Mr. Ferguson about accommodations, Mr. Ferguson replied, "Just deal with it." (ECF No. 77-13, ¶29). As a team leader, Plaintiff performed physical labor about 70 percent of the day and spent about 30 percent of the day doing paperwork. As a manager, he would spend about 90 percent of the day going to meetings and handling managerial level matters and only about 10 percent of the day doing actual physical labor. (ECF No. 79, ¶77).

Furthermore, while Linda Lang was assigned to assist Plaintiff, Plaintiff avers that she was not assigned until his return to work after his work related injury in August of 2006. (ECF No. 77-13, ¶30). Prior thereto, Ms. Lang did not perform physical work for Plaintiff other than operating the fork truck. *Id.* at ¶31. Based on the same, I find that summary judgment is not warranted.

### D. <u>Count III – ADA (Hostile Work Environment)</u>

To prevail on a hostile work environment claim under the ADA, the Plaintiff must prove:

1. that he is a qualified individual with a disability under the ADA;

2. that he was subject to unwelcome harassment;

3. the harassment was based on his disability or a request for an accommodation;

4. the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and

5. that his employer knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton v. Mental Health Ass'n of Se. Pa.,* 168 F.3d 661, 667 (3d Cir. 1999) (internal citations omitted). Defendant argues that Plaintiff cannot present evidence of the fourth element - that the harassment was sufficiently severe or pervasive to alter the condition of his employment and to create an abusive working environment. Specifically, Defendants base their position on the assumption that the "only" conduct at issue, which "represents the entire universe of supposedly

harassing behavior," was the comment by Dave Joes about Plaintiff not being able to be a good manager because his legs did not work. (ECF No. 71, pp. 25-27). To that end, Defendants urge that this is an isolated incident that cannot reasonably be a considered severe or pervasive enough to create a hostile or abusive working environment. *Id.*

In response, Plaintiff suggests that it was far more than just an isolated comment. (ECF No. 74, pp. 18-19). He lists the following incidents as evidence of a genuine issue as to whether he was subjected to a hostile work environment:

1. Dave Jones' comment that he could not be a good Manager because his legs did not work;

2. Jim Ferguson's comment that "any job is better than having no job;"

3. Jim Ferguson's failure to discuss with or have a meeting with Dave Jones to discuss the comment Dave Jones made;

4. the failure to modify the bathroom; and

5. the failure to repair the broken sections of the pathway Thomas needed to use to travel between buildings.

(ECF No. 74, pp. 18-19). Because Plaintiff raises additional conduct by Defendants that he believes creates a severe and pervasive hostile/abusive work environment, I need not consider Defendants' single comment theory. Furthermore, Defendants do not address the additional instances in their Reply Brief. *See,* ECF No. 78. As a result, the issue of whether the additional instances along with the comment create a severe or pervasive harassment so as to create a hostile or abusive work environment is not before me. Consequently, summary judgment is not warranted as to this claim.

### E.     Count IV – ADA (Retaliation)

Plaintiff claims that Defendants retaliated against Plaintiff when they demoted him upon his return to work in January 2006 and when they failed to provide him certain reasonable accommodations. (ECF No. 74, p. 20). Defendants attack Plaintiff's ability to establish both a *prima facie* case and pretext. (ECF No. 71, pp. 28-32). I will address each issue seriatim.

14

1. *Prima facie case*

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). An adverse action is one "that a reasonable employee would have found...materially adverse, which...means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F. Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

Defendants assert that Plaintiff cannot establish that the team leader position or the denial of a laptop were "material adverse actions," and further assert that there is no causal connection between any protected activity and a material adverse action. (ECF No. 71, pp. 28-32). With regard to the team leader position, as set forth above, I find there is a genuine issue of material fact as to whether the transfer to team leader was materially adverse. Consequently, summary judgment is not warranted on this ground.

With regard whether the Plaintiff suffered a materially adverse action when Defendants denied Plaintiffs request for a laptop computer, Defendants entire argument is that "no reasonable person would be dissuaded from making or supporting a charge of discrimination where the breakdown in communication regarding a requested accommodation was the result [of] such person's own non-participation in the interactive process." (ECF No. 71, p. 30). I disagree. As set forth above, I find there is a genuine issue of material fact as to whether Plaintiff participated in the interactive process with regard to the laptop computer request. Consequently, summary judgment is not warranted on this ground either.

Defendants similarly suggest that Plaintiff cannot establish a causal connection between his protected activity and a materially adverse action. (ECF No. 71, p. 31). Essentially, Defendants

15

argue that there is no causal connection because the decision to place Plaintiff as a Team Leader upon his return was made before Plaintiff's complaint about Dave Jones' comment in November of 2005. *Id.* I disagree. As set forth above, I find there is a genuine issue regarding the timing of the decision to make Plaintiff Team Leader and Plaintiff's complaint about Dave Jones' comment. Consequently, summary judgment is not warranted on this basis.

### 2. Pretext

Finally, with regard to Plaintiff's retaliation claims under the ADA, Defendants assert that Plaintiff cannot establish pretext. (ECF No. 71, pp. 31-32). Defendants' argument is based on their prior argument regarding pretext. *Id.* As set forth above, I disagree and find there is a genuine issue of material fact as to whether Plaintiff can establish pretext. Therefore summary judgment is not warranted in this regard.

### F. PHRA

Defendants suggest that they are entitled to summary judgment on Plaintiff's PHRA claims because they rise and fall with the ADA claims. (ECF No. 71, p. 32). Since I have found that summary judgment is not warranted as to Plaintiff's ADA claims, summary judgment is not warranted as to Plaintiff's PHRA claims.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROY D. THOMAS,<br><br>    Plaintiff,<br><br>vs.<br><br>PENN UNITED TECHNOLOGY, BILL JONES, DAVID JONES, and JAMES FERGUSON,<br><br>    Defendants. | Civil Action No. 09-179 |

AMBROSE, Chief District Judge

## **ORDER**

AND now, this 6th day of April, 2011, after careful consideration Defendants' Motion for Summary Judgment (ECF No. [70]), said Motion (ECF No. [70]) is denied.

A Pre-Trial Conference is set for April 18, 2011, at 10:00 a.m.

                                          BY THE COURT:

                                          /s/ Donetta W. Ambrose
                                          Donetta W. Ambrose
                                          Chief U.S. District Judge